KOCHTITZKY & JOHNSON, INC. *v.* MALVERN GRAVEL COMPANY.

4-4246

Opinion delivered March 30, 1936.

John L. McClellan, Martin, Wootton & Martin and Gordon E. Young, for appellant.

Joe W. McCoy, for appellee.

SMITH, J. Kochtitzky & Johnson, Inc., a corporation, entered into a contract with the Federal Government for

the construction of a levee on the Mississippi River. The construction bond, required in such contracts, was executed by the New Amsterdam Casualty Company. The entire contract which was completed in June, 1933, was sublet by appellant to Ward-Hayes Construction Company, a partnership.

The Malvern Gravel Company, hereinafter referred to as appellee, filed an unverified complaint in the Hot Spring Circuit Court on which a summons was served September 11, 1933, against the construction company, to recover balance due under the lease of a locomotive in which judgment for $800 was prayed. A judgment for want of an answer was rendered against the construction company on December 5, 1933. A writ of garnishment was issued August 14, 1933, and was served upon appellant, which filed a verified answer, averring that appellant, garnishee, had not been indebted to the construction company in any sum since June 29, 1933, and was not at the time of the service of the garnishment indebted to the construction company in any amount.

A demurrer was filed to this answer on January 15, 1934, which was not passed upon until the ensuing term of the court, which convened July 16, 1934, on which date the demurrer was presented to and sustained by the court, whereupon, and at the same time, judgment was rendered against appellant for the amount sued for by appellee for want of an answer. The judgment thus rendered was not entered in the proceedings of that term of court, but was entered, without notice to the appellant garnishee, at the next ensuing term of court. Execution issued on this judgment, whereupon appellant filed this suit to vacate that judgment. A motion to dismiss this complaint was heard by a special judge, and from a judgment sustaining that motion is this appeal.

Testimony to the following effect was heard upon this motion. E. H. Wootton, an attorney of Hot Springs, represented the insurance company, which was named as a defendant in the original suit brought by appellee against the construction company, but which had not been served with process. The firm of which Wootton

was a member was employed to represent appellant, and filed an answer for it containing allegations to the following effect: The claim sued on arose out of a contract with the United States Government, and the Hot Spring Circuit Court was alleged to be without jurisdiction to hear it. Appellant had been notified by the insurance company not to settle with its subcontractor, the construction company, for the reason that the subcontractor had incurred numerous bills for which its bond was liable. The answer further alleged that on June 30, 1933, the First National Bank of Hamilton, Ohio, had brought suit in the St. Francis Chancery Court against the construction company, appellant, and the insurance company, in which it claimed to hold and own an assignment from the construction company dated November 21, 1932, of all money due and to become due under the contract between the construction company and appellant; and praying that all sums due under said contract be impounded until all lienable claims against the construction company had been determined, and that the balance be paid plaintiff bank. Appellant's answer alleged that it had deposited the balance due by it to the construction company with the Bank of Eastern Arkansas, in Forrest City, subject to the orders of the chancery court of St. Francis County, and that it had no interest in this fund and asked only to be protected in its disbursement. This answer further alleged that the insurance company filed an answer in the cause pending in the St. Francis Chancery Court in which it claimed to hold an assignment from the construction company prior to the assignment to the bank. The effect of this answer was to allege that in the suit then pending in the St. Francis Chancery Court, and which had been instituted prior to the suit pending in the Hot Spring Circuit Court, appellant had been required to deposit the very money which the garnishment out of the Hot Spring Circuit Court sought to impound, and it was alleged that the jurisdiction to determine all the lienable claims, for which appellant's surety would be liable, was in the federal court. This was the answer to which a demurrer was sustained on the first day of the July, 1934, term of the Hot Spring Circuit Court.

Wootton testified that he conferred with Judge Means, who represented the plaintiff gravel company, the appellee here, and told him that he represented all of the defendants. He and Judge Means agreed that the answer presented questions of law which would not require a jury, and it was further agreed that the cause would be submitted to the court without a jury at a time convenient to all parties. He employed J. L. McClellan, a local attorney, to assist him in the case. He understood from Judge Means and his associate counsel that the matter would be submitted for trial at a time convenient to all parties, of which all would have notice.

McClellan testified that he advised Judge Means of his employment and agreed with him that the demurrer might be heard at any time convenient to the court, and to opposing counsel, of which date, when agreed upon, he would notify Mr. Wootton and the demurrer could be heard and the issues settled. He further testified that the docket was sounded and the case called by the presiding judge at the term preceding the July, 1934, term, at which time he stated to the court in the presence of Judge Means, that there was a demurrer to be disposed of upon which Wootton, the principal counsel, wished to be heard, and he understood that it was then agreed that the court would hear the demurrer at some future time convenient to all parties. He further testified that at that time he was a candidate for Congress, and Judge Means was a candidate opposing the re-election of the presiding judge, and it was his understanding that no civil cases would be tried at this July, 1934, term, which was held just preceding the primary election in which witness was interested.

The presiding judge testified that on the opening day of the court Judge Means called up the demurrer. No other attorneys were present. He had forgotten that McClellan was connected with the case. Judge Means suggested that the judgment be entered against the garnishee after the demurrer had been sustained, and stated that if any one came in and raised an objection the judgment could be set aside. Only routine matters were attended

to at that term of court on account of the political campaign.

Kochtitzky, the chief officer of the appellant corporation, gave testimony supporting the allegations of the answer filed for his corporation to which the demurrer had been sustained. According to his testimony, the garnishee had in its hands no money belonging to the construction company at the time of the service of the writ of garnishment.

Judge Means testified in support of the motion to dismiss the complaint filed to vacate the judgment. He did not understand that Wootton represented any client except the insurance company, and he did not ask a judgment against it. He understood that McClellan was acting as local counsel for Wootton. He did not understand that he had any agreement with any one as to the time when the demurrer should be heard, and he had not agreed that the judgment might be vacated, if objection were made to it.

We accept the testimony of Judge Means without reservation. It exonerates him from any breach of agreement regarding the trial of the original suit. But even so, it has been made to appear very clearly that a gross injustice has been done appellant, according to the testimony of Kochtitzky. Its attorneys were guilty of no negligence or omission of any duty to their client. While they may have been mistaken as to the effect of the agreement with Judge Means, it is certain that they thought no judgment would be rendered until the demurrer had been heard, and that this hearing would not be had until they were notified and afforded an opportunity to be present. McClellan had the definite impression and, as he thought, an understanding that no civil cases in which he was interested would be disposed of at this July, 1934, term of court.

A case of unavoidable casualty has been established within the meaning of the seventh paragraph of § 6290 of Crawford & Moses' Digest, and the judgment against the garnishee should be set aside, and the answer of the garnishee heard on its merits. In the following cases

this relief was granted after the expiration of the term at which the judgment sought to be vacated had been rendered. In each of the cases cited there had been a misunderstanding between opposing counsel which resulted in a failure to make a defense which would otherwise have been interposed, as has here occurred. *McElroy* v. *Underwood,* 170 Ark. 794, 281 S. W. 368; *Wrenn* v. *Manufacturers' Furniture Company,* 172 Ark. 599, 289 S. W. 769; *American Company of Arkansas* v. *Wilson,* 187 Ark. 625, 61 S. W. (2d) 453.

The judgment of the court sustaining the motion to dismiss the complaint of appellant will, therefore, be reversed, and the cause remanded with directions to overrule that motion, and to hear appellant's answer as garnishee upon its merits.